JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| BECKERSMITH MEDICAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> QUINTON BICKLEY, MARSHALL FRYMAN, and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No.: SACV 22-02072-CJC (ADSx) <br><br><br> ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING REQUEST FOR SANCTIONS [Dkt. 19] |

I.  INTRODUCTION

On July 7, 2021, Plaintiff BeckerSmith Medical, Inc. ("BSM") filed this action against Defendants Quinton Bickley and Marshall Fryman in the Superior Court of California, County of Orange, alleging that Defendants "conspired together to weaponize the knowledge of BSM's confidential information against BSM either for the purpose of

leveraging a better deal with BSM or for the purpose of disrupting and interfering with BSM's business in retaliation for BSM's refusal to acquiesce to their demands." (Dkt. 1-1 [Complaint] ¶ 14.) Now before the Court is Defendants' motion to remand and request for sanctions. (Dkt. 19.) For the following reasons, the Court **GRANTS** the motion to remand and **DENIES** the request for sanctions.[1]

## II. BACKGROUND

### A. Factual Background

BSM is a medical device developer that focuses on products that monitor, analyze, and manage Cerebral Spinal Fluid ("CSF") drainage. (Dkt. 1-33 [Second Amended Complaint, hereinafter "SAC"] ¶ 7.) "For over ten years, Plaintiff has been working on a life-saving CSF device that revolutionizes CSF drainage, monitoring, and analysis through automation and other confidential and proprietary technology." (*Id.*) Bickley, who worked with BSM from 2013 to 2021 and used to be BSM's Chief Executive Officer, signed a nondisclosure agreement and a consulting agreement with BSM. (*Id.* ¶ 8.) In 2020, he began working with Fryman, giving him BSM's confidential or proprietary information after Fryman signed a nondisclosure agreement that Bickley did not tell BSM about. (*Id.* ¶ 12.) Bickley asked Fryman to use the confidential or proprietary information "to prepare patents for BSM, to work to develop CSF products for BSM, and to participate in strategizing about fundraising, marketing, and business matters for BSM." (*Id.*) In doing so, Bickley did not "adequately protect[] BSM's confidential and proprietary information or BSM's best interests." (*Id.*)

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for January 30, 2023, is hereby vacated and removed from the calendar.

In spring 2021, BSM renegotiated its contract with Bickley. (*Id.* ¶ 14.) During those negotiations, Bickley asked BSM to give Fryman a substantial equity stake in BSM, but BSM was reticent because it believed "it needed to first get more familiar with" Fryman. (*Id.* ¶¶ 14–15.) Although BSM and Bickley "shook on" a deal on May 27, 2021, less than a week later Bickley "abruptly informed BSM that both he and Fryman were terminating their relationship with BSM." (*Id.* ¶ 15.)

"Bickley and Fryman then conspired together to weaponize their knowledge of [BSM's] confidential information against [BSM] either for the purpose of leveraging a better deal with [BSM] or for the purpose of disrupting and interfering with [BSM's] business in retaliation for Plaintiff's refusal to acquiesce to their demands." (*Id.* ¶ 16.) For example, Fryman filed a provisional patent application pertaining to projects he had been working on for BSM, which contained BSM's confidential and proprietary information. (*Id.* ¶ 17.)

On June 15, 2021, Fryman's attorney sent BSM, its manufacturing partner Gilero, and a BSM consultant, LMG Corp., a letter asserting that BSM was using Fryman's intellectual property without authorization. (*Id.* ¶¶ 18–19.) Both Gilero and LMG Corp. stopped working with BSM because of these letters. (*Id.* ¶ 21.) A company administering a crowdfunding-type investment program for technology companies also rescinded its offer for BSM to participate in its program based on Fryman's claims. (*Id.* ¶ 22.)

In this case, BSM asserts claims for (1) breach of Bickley's NDA, (2) breach of Bickley's consulting agreement, (3) breach of fiduciary duty for failure to use reasonable care against Bickley, (4) breach of the duty of loyalty against Bickley, (5) breach of the duty of confidentiality against Bickley, (6) indemnification against Bickley, (7) breach of Fryman's NDA, (8) intentional interference with contractual relations against both

Bickley and Fryman, (9) intentional interference with prospective economic advantage against both Bickley and Fryman, (10) unjust enrichment against both Bickley and Fryman, (11) an accounting against both Bickley and Fryman, and (12) trade secret misappropriation under the California Uniform Trade Secrets Act ("CUTSA") against both Bickley and Fryman. (*Id.* ¶¶ 27–94.) Among other relief, BSM seeks damages, injunctive relief, and fees. (*Id.* at 21–22.) As to injunctive relief, BSM seeks an injunction preventing Fryman and Bickley from "patenting, manufacturing, making, distributing, marketing, offering to sell or selling products that utilize, embody, or were developed using" BSM's confidential or proprietary information, disclosing BSM's confidential or proprietary information, or offering to sell or selling any products using BSM's confidential or proprietary information. (*Id.* at 20.)

### B.   Procedural Background

BSM first filed this action in state court in July 2021, alleging claims for (1) breach of contract, (2) breach of fiduciary duty, (3) indemnification, (4) intentional interference with contractual relations and (5) prospective economic advantage, (6) unjust enrichment, and (7) an accounting. On September 7, 2021, Defendants filed an answer. (Dkt. 1 [Notice of Removal, hereinafter "NOR"] ¶ 3.)

On October 19, 2021, BSM filed a First Amended Complaint ("FAC") adding an additional breach of contract claim against Bickley. (*Id.* ¶ 4.) On November 29, 2021, Defendants filed an answer to the FAC, and Bickley filed a cross-complaint against BSM alleging six claims arising out of Bickley's former employment relationship with BSM. (*Id.* ¶ 5.) The parties engaged in an unsuccessful mediation in early 2022 and further discovery during the first half of 2022. (*Id.* ¶ 7.)

On July 26, 2022, BSM filed its Second Amended Complaint, adding a new claim against Defendants for trade secret misappropriation under the CUTSA. (*Id.* ¶ 8.) Defendants argue that this "refocused BSM's entire case against Bickley and Fryman." (*Id.* ¶ 9.) On September 8, 2022, Defendants filed an answer to the SAC. (*Id.* ¶ 15.)

On September 1, 2022, BSM served Defendants with an unredacted Identification of Trade Secrets (the "UITS") under California Code of Civil Procedure § 2019.210, which was designated Attorneys' Eyes Only. Defendants argue BSM's UITS shows how its trade secret misappropriation claim "is fully preempted by federal patent law" because "BSM's right to relief under its newly alleged trade secret claim necessarily depends upon a substantial question of inventorship." (*Id.* ¶¶ 12–13.) On September 6, 2022, Defendants' counsel asked BSM to allow Fryman to review the UITS. After meeting and conferring, BSM agreed to redact the UITS so that counsel could share it with Fryman. On September 20, 2022, BSM served Defendants with a redacted version of the UITS (the "RITS"). (*Id.* ¶ 16.)

On November 14, 2022, Defendants filed a notice of removal to this Court.

### III.   LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation omitted). A federal district court has jurisdiction over a civil action removed from state court only if the action could have been brought in the federal court originally. *See* 28 U.S.C. § 1441(a). Federal courts have subject matter jurisdiction over cases "arising under" federal law. 28 U.S.C. § 1331. When a case is removed, the burden of establishing the propriety of removal falls on the defendant, and the removal statute is strictly construed against removal jurisdiction. *See Gaus v. Miles, Inc.*, 980 F.2d 564,

566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id*.

## IV. DISCUSSION

The Court first addresses whether Defendants' removal was timely and, concluding it was not, addresses whether to award sanctions.

### A. Timeliness of Removal

The deadline for a defendant to remove a case from state to federal court is thirty days after receipt of the initial pleading. *See* 28 U.S.C. § 1446(b)(1). "[I]f the case stated by the initial pleading is not removable," however, a defendant may remove the case thirty "days after receipt . . . of a copy of an amended pleading, motion, order[,] or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3). The thirty-day "time limit is mandatory and a timely objection to a late petition will defeat removal." *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980).

Defendants do not dispute that they missed the thirty-day deadline by, at the very least, twenty-four days. (*See* Opp. at 21 ["By Defendants' reasonable count, [twenty-four days] is the length of the extension Defendants seek from this Court to the 30-day removal deadline of Section 1446(b)."].) BSM added its claim for trade secret misappropriation 102 days before removal, served its UITS seventy-four days before removal, and served its RITS fifty-four days before removal.

However, Defendants argue that a more relaxed removal schedule applies under 28 U.S.C. Section 1454. That statute provides that "the time limitations contained in section

1445(b) may be extended at any time for cause shown" in "[a] civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents" in which removal is sought. 28 U.S.C. § 1454. Defendants argue that BSM's trade secret claim "arises under" federal patent law because it necessarily involves an inventorship dispute. But even if BSM's trade secret claim "arises under" federal patent law—an issue the Court need not decide—Defendants have not provided any "cause" to justify extending the thirty-day deadline. *See* 28 U.S.C. § 1454.

"The few district courts to consider" the "cause shown" language in Section 1454 "have concluded at a minimum the standard imposes some burden on the removing party to justify why its tardiness should be excused." *NematicITO, Inc. v. Spectrum Five LLC*, 2016 WL 3167181, at *4 (N.D. Cal. June 6, 2016) (collecting cases). "Oversight, inadvertence, or excusable neglect are usually insufficient to justify tardiness." *Id.* (cleaned up). Courts have found additional guidance on what constitutes cause in authorities interpreting Federal Rule of Civil Procedure 6(b), which allows courts to extend deadlines for "good cause." *Id.* This standard is not rigorous, but "generally requires a showing that the 'requested relief was reasonable, justified, and would not result in prejudice to any party.'" *Id.* (quoting *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1260 (9th Cir. 2010)).

Defendants assert that their "delay resulted from the complex nature of the intellectual property involved in this case; the restrictions of the operative protective order; and counsel's desire to carefully evaluate the precise nature of BSM's Identification of Trade Secrets to determine removability, with appropriate input from Defendants, while fully complying with the operative protective order." None of this is sufficient cause to warrant extending the removal deadline. The intellectual property and protective order at issue in this case are no more complex than those involved in the complex intellectual property cases courts like this one and counsel like Defendants'

counsel deal with regularly.  *See Bralich v. Sullivan*, 2017 WL 9325638, at *7 (D. Haw. Aug. 8, 2017) (rejecting argument that complex nature of case or procedural history provided a basis for extending removal period under Section 1454).  The protective order's restrictions were addressed by service of the RITS fifty-four days before removal, so those restrictions cannot justify Defendants' additional twenty-four day delay.  And Defendants had thirty days to get input from Defendants and take appropriate action that complied with the protective order.  What Defendants present is nothing more than oversight, inadvertence, or neglect, which is not enough cause to justify extending the deadline.  *NematicITO*, 2016 WL 3167181, at *4; *see Karma Power, LLC v. HTP, Inc.*, 2020 WL 4915740, at *2 (W.D. Wash. Aug. 21, 2020) (granting motion to remand and finding the defendants failed to show cause to extend the removal deadline under Section 1454, explaining, "Defendants have repeatedly been made aware of the nature of this case more than 30 days prior to removal, and have failed to demonstrate excusable neglect or otherwise show good cause to extend the deadline under 28 U.S.C. § 1454(b)").

What is more, the requested relief would prejudice BSM, as "Defendants acknowledge that removal will vacate the current March 20, 2023 trial date in the case." (NOR at 12); *see NematicITO*, 2016 WL 3167181, at *4 (finding that the plaintiffs would suffer prejudice if the deadline were extended under Section 1454 based on their pending motion for summary adjudication in state court"—an event that may move this action closer towards resolution").

"[D]efendants seeking removal of an action to federal court must do so in a timely fashion." *NematicITO*, 2016 WL 3167181, at *1.  Defendants did not do so.  And their reasons for failing to do so do not constitute "cause" to extend the removal deadline, even if Section 1454 applies in this case.

**B.      Sanctions**

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award [costs and expenses] under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, [an award] should be denied." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). "[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit . . . ." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). A court may conclude that removal was objectively unreasonable when "the relevant case law clearly foreclosed the defendant's basis of removal." *Id.* at 1066. Whether to award costs and expenses is within a district court's discretion. *See Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015).

The Court exercises its discretion to decline awarding costs and expenses here. Although Defendants conceded they missed the removal deadline, their argument that Section 1454 applied did not lack any objectively reasonable basis. *See Martin*, 546 U.S. at 141. Nor was Defendants' asserted basis for removal clearly foreclosed by relevant caselaw. *See Lussier*, 518 F.3d at 1065; *see Karma Power*, 2020 WL 4915740, at *2 (declining to award fees and costs after rejecting Section 1454 extension, explaining that "Defendants were leaning on at least some objectively reasonable but ultimately losing arguments").

//
//
//
//

V. CONCLUSION

For the foregoing reasons, BSM's motion is **GRANTED**, and the request for sanctions is **DENIED**. This action is **REMANDED** to the Superior Court of California, County of Orange.

DATED: January 26, 2023

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE